T.C. Summary Opinion 2010-70


UNITED STATES TAX COURT


GRANT A. MCDONALD, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 583-09S.                    Filed June 8, 2010.


Grant A. McDonald, pro se.

Rebekah Myers and David W. Sorenson, for respondent.


GERBER, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined income tax deficiencies and section 6663 fraud penalties for petitioner's 2004 and 2005 tax years. In the alternative, respondent determined that if petitioner is not subject to the fraud penalties, he is liable for accuracy-related penalties under section 6662(a). Petitioner did not appear at trial and respondent moved for dismissal for lack of prosecution, and the Court was disposed to grant the motion as it related to the income tax deficiencies. With respect to the fraud penalties, respondent presented evidence in support of his burden to show that petitioner filed fraudulent returns. We consider here whether respondent has presented clear and convincing evidence of fraud for petitioner's 2004 and 2005 tax years and/or whether petitioner is subject to the accuracy-related penalties.

## Background

Petitioner resided in Utah at the time his petition was filed. On Schedule A, Itemized Deductions, of his 2004 Form 1040, U.S. Individual Income Tax Return, petitioner claimed a $29,897 casualty loss in connection with residential real estate. Petitioner reported that a "casualty" had reduced the $135,000 value of his residence to $100,100. The $34,900 reported casualty was reduced to $29,897 on account of various limitations

placed upon an individual's casualty loss claims. Petitioner's $34,900 casualty loss reduced his $49,027 reported income to an extent that his tax liability was reduced to $423, thereby enabling him to obtain an approximately $4,500 refund of the $4,891 that was withheld from his wage income.

During 2004 petitioner and his wife were separated, and his wife was living in their residence without petitioner. Petitioner's 2004 tax return was audited, and respondent's revenue agent examined the claimed casualty loss. Petitioner explained that during 2004 his wife had dug up the basement. In support of the casualty loss claim petitioner presented invoices for repairs, canceled checks, insurance statements, and two police reports.

The invoice, in the total amount of $34,900, reflected repair and replacement of the basement cement foundation, outdoor deck, floors, drapes and window coverings, and appliances, including a garage door opener, toilets, and other items. The company name shown on the invoice was Designer Real Estate (Designer). Respondent's agent attempted to verify the existence of Designer by checking the location and attempting to call the telephone number, but no such enterprise was at the designated location, and the telephone number was not in service.

Respondent's agent also considered the police reports petitioner provided and discovered that one of them reflected

that the basement floor had been "broken apart" by petitioner's wife and her friends. The other police report reflected that petitioner had reported that some of the doors were unlocked and that some "furniture * * * or belongings had been stolen." Only the basement floor damage, however, was included as part of petitioner's casualty loss claim for Federal tax purposes.

Respondent's agent asked petitioner to substantiate the payment of the $34,900 to Designer, and petitioner provided respondent four checks to Designer dated in early 2005 and totaling $34,900. Respondent's agent noted that although the checks were dated in early 2005, they were not cashed until July and August 2006. The checks were cashed by petitioner's nephew, and when respondent's agent asked petitioner about the delay in cashing the checks, petitioner admitted that the checks were backdated in order to show payment to Designer, that Designer was actually his nephew, and that the arrangement between him and his nephew was a loan to finance the home repairs and improvements. Respondent's agent checked petitioner's nephew's tax returns to determine whether he had reported any income regarding Designer, and the nephew had not reported any such income.

Respondent's agent checked petitioner's bank records and determined that the issuance and cashing of the four checks, totaling $34,900, all occurred after respondent's examination of petitioner's 2004 tax return had begun. The agent also

determined that shortly after petitioner's nephew cashed the checks, the same total ($34,900) reappeared in petitioner's bank account. Petitioner related other versions of the payment for the alleged repairs or improvements but offered no proof in support of his allegations. The agent also became aware that petitioner had filed for bankruptcy in 2005, and the bankruptcy filing did not list Designer as a creditor.

Petitioner's 2005 income tax return was also examined regarding his contributions and business expenses. The agent allowed a portion of the contributions and disallowed the remainder because petitioner was either unable to substantiate the value of contributed assets or failed to meet the recordkeeping requirements.

On petitioner's 2005 Schedule C, Profit or Loss From Business, he reported $10,352 of income and $40,080 of expenses and claimed a $29,728 loss from his business. Petitioner described his business as "Handyman Service", but gave varying explanations to the agent as to the type of work actually performed. The items claimed on petitioner's Schedule C included contract labor; depreciation; employee benefits programs; and travel, meals, and entertainment. The largest deduction was $18,615 for employee benefits.

Petitioner was unable to substantiate adequately any of the claimed Schedule C deductions, and respondent's agent disallowed

the entire $40,080 claimed, although he did not change the reported income of $10,352.  Petitioner provided oral explanations of the deductions claimed but did not provide substantiation or evidence sufficient to satisfy the agent that any amount was deductible.

## Discussion

The Court has already upheld the 2004 and 2005 income tax deficiencies because of petitioner's failure to prosecute.  The only question remaining is whether petitioner is liable for section 6663(a) fraud penalties and/or section 6662(a) accuracy-related penalties with respect to the adjustments.

Section 6663(a) provides for a 75-percent penalty for any portion of an underpayment attributable to fraud.  Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing.  Petzoldt v. Commissioner, 92 T.C. 661, 698 (1989).  Fraudulent intent is defined as "'actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.'"  Estate of Temple v. Commissioner, 67 T.C. 143, 159 (1976) (quoting Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939)).  If any portion of the underpayment is attributable to fraud, the entire underpayment will be treated as attributable to fraud unless the taxpayer establishes by a preponderance of

the evidence that part of the underpayment is not due to fraud. Sec. 6663(b).

Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for each of the years in issue and that some portion of the underpayment is due to fraud. See sec. 7454(a); Rule 142(b). Fraud is never presumed but must be established by independent evidence that establishes fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The following indicia have been developed by the courts as "badges of fraud" from which fraudulent intent can be inferred: (1) Understating income; (2) maintaining inadequate records; (3) engaging in a pattern of behavior that indicates an intent to mislead; (4) concealing assets; (5) providing implausible or inconsistent explanations of behavior; (6) filing false documents; and (7) failing to provide documents to the Commissioner during examination. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Cooley v. Commissioner, T.C. Memo. 2004-49. Although no single factor is necessarily sufficient to establish fraud, a combination of several of these factors may be persuasive evidence of fraud. See Bradford v. Commissioner, supra at 307-308.

With those principles in mind, we first consider petitioner's 2004 tax year and his claimed casualty loss deduction. Petitioner claimed a $34,900 casualty loss that

reduced $49,027 in income to such an extent that his tax liability was reduced to $423, thereby enabling petitioner to obtain an approximately $4,500 refund of the $4,891 that was withheld from his wage income.  Respondent has shown that the only damage to petitioner's home was to the basement foundation and was intentionally caused by his wife.  Other than repairs for that damage, all of the alleged repairs to petitioner's home appear to be renovations or improvements.

Section 165(a) permits deductions for losses not compensated for by insurance or otherwise.  Section 165(c) limits the losses of individuals to those incurred in a trade or business or any transaction entered into for profit, or those arising from fire, storm, shipwreck, or other casualty, or from theft.  To deduct a loss as a casualty, petitioner must have incurred damage by or as a proximate result of a fire, storm, shipwreck, or other casualty, and he must establish the amount of the loss resulting from the casualty as distinguished from other causes.  A casualty has been defined as the total or partial destruction of property resulting from an identifiable event of a sudden or unexpected nature.  Matheson v. Commissioner, 54 F.2d 537, 539 (2d Cir. 1931), affg. 18 B.T.A. 674 (1930); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971); Durden v. Commissioner, 3 T.C. 1, 3 (1944).

Respondent has shown that petitioner did not sustain a casualty loss and the only damage to petitioner's home was

intentionally caused by a resident/owner.  More significantly, respondent has shown that the evidence petitioner offered in support of his claimed casualty loss deduction was fabricated after the fact and wholly false and fraudulent.  It is clear that petitioner falsely claimed the $34,900 deduction on his 2004 return.  Moreover, petitioner continued his pattern of fraud and deceit by submitting backdated fabricated and false documentation of home repair.

Respondent has met the standard of showing by clear and convincing evidence that petitioner intentionally filed a false return for 2004.  We accordingly hold that petitioner is liable for the section 6663(a) fraud penalty on the entire underpayment for his 2004 tax year.

With respect to the 2005 tax year, respondent disallowed some of petitioner's contribution deductions for lack of complete substantiation or failure to meet the technical requirements for deduction.  Respondent also disallowed all of petitioner's claimed Schedule C business deductions of $40,080 but did not disturb the $10,352 of income petitioner reported on the 2005 Schedule C.  By accepting the income, respondent accepts that petitioner did have a business and/or business income.  The circumstances regarding the 2005 tax year are different from those for 2004 in that respondent has not shown for 2005 that petitioner intentionally and knowingly attempted to evade tax.

In addition, respondent's adjustments are more technical and more in line with a routine disallowance for lack of substantiation or for failure to meet legal requirements.  For 2005 there is no shown pattern of deception as there was for 2004 and no showing that petitioner intentionally attempted to evade the tax owing.

Accordingly, we hold that respondent has not shown that petitioner is liable for the section 6663(a) penalty for 2005. Respondent, in the alternative, determined that petitioner was liable for the section 6662(a) accuracy-related penalty for 2005. To sustain that penalty, respondent has the burden of production. See sec. 7491(c).  There is no question that respondent has met the burden of production with respect to the accuracy-related penalty for 2005.  Respondent met that burden by evidence showing that petitioner failed to maintain adequate records and/or to substantiate the disallowed contribution and business deductions claimed on his 2005 tax return.  Under the circumstances of this case where petitioner failed to come forward and show reasonable cause for the underpayment, petitioner is liable for the section 6662(a) accuracy-related penalty for the 2005 tax year.

To reflect the foregoing,

<u>An appropriate order of dismissal and decision will be entered</u>.